# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:  Case No. A09-00623-DMD | Chapter 11 |
| ADAK FISHERIES, LLC, | |
| Debtor. | **Filed On 1/28/10** |
| INDEPENDENCE BANK, a Rhode Island banking corporation, | Adversary No. A09-90037-DMD |
| Plaintiff, | |
| v. | |
| ALASKA NATIONAL INSURANCE COMPANY, an Alaska corporation, | |
| Defendant. | |

## REPORT AND RECOMMENDATION REGARDING THE DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE

To:    The United States District Court for the District of Alaska

Introduction

Defendant Alaska National Insurance Company has filed a motion to withdraw the reference of this action to the United States District Court for the District of Alaska. Withdrawal of the reference is requested because 1) this is a  non-core proceeding, 2) the claims asserted arise solely under non-bankruptcy law and do not implicate the debtor or its estate, and 3) the defendant has demanded a jury trial and does not consent to trial before the

bankruptcy court. The plaintiff opposes the motion. After reviewing the motion and opposition, and considering the record in both this adversary proceeding and in Main Case No. A09-00623-DMD, *In re Adak Fisheries, LLC*, the Bankruptcy Court submits the following report to the United States District Court and recommends that the defendant's motion to withdraw the reference be granted.


Case Background

Debtor Adak Fisheries, LLC, filed a chapter 11 petition on September 11, 2009. The plaintiff in this adversary proceeding, Independence Bank ("IB"), was the debtor's major secured creditor. During the course of the chapter 11 bankruptcy, the debtor's fish processing plant and related equipment were sold, subject to IB's security interests, to Adak Seafood, LLC.[1] The buyer assumed approximately $6.7 million of debt owed to IB.

IB filed its adversary proceeding against Alaska National Insurance Company on November 6, 2009. Its adversary complaint contains two causes of action, one for breach of contract and the other for bad faith. The compliant alleges that Alaska National has breached the terms and conditions of an insurance policy it issued to the debtor because it made a loss payment to the debtor in the sum of $76,234.10. IB alleges it is named as a loss payee on the policy and should have received this payment instead. IB also alleges that debtor Adak Fisheries and another entity, Aleut Enterprise, LLC, breached the terms of the insurance policy by "allowing the misappropriation and conversion of the insurance

---

[1] Order Granting Debtor's App. to Sell Adak Plant Free and Clear of Liens, entered Nov. 12, 2009 (Docket No. 149), in Main Case No. A09-00623-DMD.

proceeds" by the debtor.[2]  However, neither the debtor nor Aleut Enterprise is a named defendant in the adversary proceeding.[3]

IB's second cause of action, for bad faith, makes the following, general allegation:

> 15.  The collusion between Alaska National, ADAK, and [Aleut Enterprise] constituted bad faith as is in [sic] direct contravention to the terms of the agreements. This is a further example of such wrongful actions between the defendants in this and the related adversary proceeding.[4]

Alaska National's answer denies that a breach occurred.[5]  As an affirmative defense, it states that the payment was made pursuant to building property coverage provided under a commercial lines insurance policy in effect from June 3, 2008, to June 3, 2009.[6]  It says that the bank was erroneously listed on this policy as a "mortgage holder" with respect to certain property.  Alaska National made a loss payment for structural damage to this property resulting from a storm which occurred on February 12, 2009.  The property is

---

[2] Complaint, filed Nov. 6, 2009 (Docket No. 1), at 3, ¶ 11.

[3] Proceedings against the debtor are stayed, in any event, under 11 U.S.C. § 362(a).

[4] *Id.* at 4, ¶ 15.  The "related adversary" is *Independence Bank v. Adak Fisheries, LLC, et al.,* Adv. No. A09-90031-DMD.  A motion to dismiss and a motion for summary judgment, seeking dismissal of the debtor from that proceeding, are pending in this related case.

[5] Answer, filed Dec. 21, 2009 (Docket No. 5), at 3, ¶ 11.

[6] *Id.* at 4.

3

owned by Aleut Enterprise and leased to the debtor. Independence Bank did not actually hold a mortgage on this property.

The loss payment was made on June 10, 2009, by joint check to the debtor and Aleut Enterprise.[7] The total payment was $152,468.20. On August 13, 2009, a subsidiary of Aleut Enterprise cut a check for $76,234.10 to the debtor. All of these events occurred *before* the debtor filed its bankruptcy petition on September 11, 2009. IB prays for a judgment in its favor in an amount to be proven at trial, plus punitive damages as a sanction to deter Alaska National for its breach of contract, as well as attorney's fees and costs. No relief is sought against either the debtor or Aleut Enterprise.

Analysis

IB argues that the Bankruptcy Court should retain jurisdiction because this is a core proceeding. "Core proceeding" is not defined in the Bankruptcy Code.[8] "Rather, section 157(b)(2) contains a laundry list of core proceedings along with the admonition that core proceedings include, 'but are not limited to,' the items listed."[9] Section 157(b)(2) provides:

Core proceedings include, but are not limited to:

---

[7] IB's Obj. to Mot. to Withdraw Reference, filed Jan. 12, 2010 (Docket No. 16), at 2.

[8] *Taxel v. Electronic Sports Research (In re Cinematronics, Inc.)*, 916 F.2d 1444, 1449 (9th Cir. 1990).

[9] *Id.* at 1449-50 (citation omitted).

4

(A)  matters concerning the administration of the estate;

(B)  allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C)  counterclaims by the estate against persons filing claims against the estate;

(D)  orders in respect to obtaining credit;

(E)  orders to turn over property of the estate;

(F)  proceedings to determine, avoid, or recover preferences;

(G)  motions to terminate, annul, or modify the automatic stay;

(H)  proceedings to determine, avoid, or recover fraudulent conveyances;

(I)  determinations as to the dischargeability of particular debts;

(J)  objections to discharges;

(K)  determinations of the validity, extent, or priority of liens;

(L)  confirmations of plans;

5

(M)  orders approving the use or lease of property, including the use of cash collateral;

(N)  orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

(P)  recognition of foreign proceedings and other matters under chapter 15 of title 11.[10]

IB says this is a core proceeding under § 157(b)(2)(A) because it concerns the administration of the bankruptcy estate.  However, the Ninth Circuit has cautioned that bankruptcy courts should avoid characterizing matters falling within this "catch-all" subsection as core proceedings "if to do so would raise constitutional problems."[11]  The Ninth Circuit recently reiterated this point: "under principles of constitutional avoidance, the otherwise broad 'catchall' provisions of bankruptcy court core jurisdiction should be interpreted narrowly."[12]  Traditional breach of contract claims which arise before a bankruptcy is filed, and which are independent of the administration of bankruptcy assets,

---

[10] 28 U.S.C. § 157(b)(2).

[11] *Cinematronics*, 916 F.2d at 1450, *citing Piombo Corp. v. Castlerock Properties (In re Castlerock Properties)*, 781 F.2d. 159, 162 (9th Cir. 1986).

[12] *Harris v. Wittman (In re Harris)*, __ F.3d __, 2009 WL 4893658 at 9 (9th Cir. 2009).

6

are not core proceedings.[13]  It would be inappropriate to characterize IB's breach of contract and bad faith claims, which involve solely non-debtor parties, as a core proceeding under § 157(b)(2)(A).  Nor do IB's claims fall under any of the other subsections of § 157(b)(2).

Non-core proceedings are ones which do not depend on the Bankruptcy Code for their existence and could proceed in a forum other than the bankruptcy court.[14] This is a non-core proceeding.  It involves two non-debtor parties and a state law contract claim.  It could have been brought regardless of whether Adak Fisheries had filed bankruptcy. Bankruptcy courts lack subject matter jurisdiction over such claims.[15]  Additionally, Alaska National has demanded a jury trial and does not consent to bankruptcy court jurisdiction.  A bankruptcy court cannot conduct a jury trial in non-core proceedings absent express consent of all parties.[16]

IB argues that the reference should not be withdrawn because its recently filed motion for summary judgment will resolve all issues between the parties.  While 28 U.S.C. § 157(c)(1) permits a bankruptcy judge to submit proposed findings to the district court in

---

[13] *Id.*

[14] *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004).

[15]  *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982) (a bankruptcy court's exercise of jurisdiction over a prepetition, state law contract claim, over the objection of one of the parties, violates Article III of the United States Constitution).  *See also Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 584 (1985) (Absent consent of the litigants, "Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law.").

[16] 28 U.S.C. § 157(e).

7

non-core proceedings, such proceedings must also be *related* to a bankruptcy case.[17]  This matter is not related to the Adak Fisheries bankruptcy case.  The debtor is not a named party. The resolution of this dispute will have minimal, if any, impact on the bankruptcy estate, particularly in light of the fact that the party who purchased the debtor's processing plant assumed IB's secured debt.  As noted by Alaska National, this dispute involves the interpretation and enforcement of an insurance contract.  It requires no special expertise in bankruptcy for its resolution.  The claims against Alaska National could be asserted regardless of whether the bankruptcy had been filed.  Under such circumstances, retention of this matter, even for the limited purpose of reviewing the plaintiff's summary judgment motion, is difficult to justify.  Bankruptcy jurisdiction over this non-core matter is tenuous, at best.  The review and determination of the issues presented here should be made in the first instance by the court which unquestionably has jurisdiction to do so.


Recommendation and Conclusion

This is a non-core proceeding, and the defendant has demanded a jury trial. The defendant does not consent to the jurisdiction of the bankruptcy court for trial of the matter and has moved to withdraw the reference.  The bankruptcy court concurs in the defendant's position and respectfully recommends that the motion to withdraw the reference

---

[17] 28 U.S.C. § 157(c)(1) specifies that "[a] bankruptcy judge may hear a proceeding that is not a core proceeding *but that is otherwise related to a case under title 11*.  In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, . . ." [emphasis added]

be granted, so that this matter can be determined by the District Court in accordance with 28

U.S.C. § 157(d).

DATED:  January 27, 2010

BY THE COURT


/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge



Serve:  U.S. District Court, D. Alaska
        A. Willig, Esq.
        A. Guidi, Esq.
        J. Siemers, Esq.
        Cheryl Rapp, Adv. Case Mgr.
        J. Ostrovsky, Clerk, Bankruptcy Court

        01/28/10